IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELVIN B. COLEY          *

   Plaintiff             *

     v                  *     Civil Action No. DKC-10-766

J. MICHAEL STOUFFER, et al.   *

   Defendants             *

***
**<u>MEMORANDUM OPINION</u>**

Pending in the above-captioned case is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 22. Plaintiff has opposed the motion (ECF No. 28), and Defendants have filed a Reply (ECF No. 29). Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

**Background**

Plaintiff, an Arizona state prisoner currently confined in the Maryland Division of Correction, alleges that on October 31, 2007, he received legal mail from prison staff which had been opened outside of his presence. ECF No. 1 at p. 4. He states a pattern had emerged over the previous 30 months wherein his legal mail was improperly returned or opened outside of his presence. The mail which was returned to sender without notice to Plaintiff contained Westlaw and Find Law cases. Plaintiff claims he filed at least five Adminsitrative Remedy Procedure requests (ARP) regarding the opening of legal mail, legal mail envelopes being confiscated, and legal mail being returned to sender, but he did not get favorable responses from the Warden. Plaintiff then appealed to Assistant Commissioner France who found "some of the ARPs" meritorious in part, but implemented no changes in procedures followed. *Id*. Plaintiff alleges the

practices in place violate Division of Correction Directive (DCD) 250-1 as well as Maryland Administrative Code (COMAR) §12.02.20.2 and related institutional directives. Lastly, he claims his First Amendment rights are infringed. He seeks injunctive, declaratory, and compensatory relief. ECF No. 1 at pp. 6 -7.

Plaintiff addressed his claim that he was not given the envelopes in which legal material was mailed by filing an ARP. He stated when he asked for a written statement reflecting the envelopes were confiscated, his request was denied. ECF No. 1 at Ex. 1. Prison staff informed Plaintiff that withholding envelopes from legal mail was a security measure and that no one was obliged to provide him with a written confiscation notice. *Id*. at p. 4.

Plaintiff's ARP regarding legal mail that was opened outside of his presence was filed on June 6, 2007, and was administratively dismissed at the institutional level of review. ECF No. 1 at Ex. 2. His claim was simply that he was handed an envelope clearly marked "Legal Mail" in red ink which had been opened without him being present. The administrative dismissal requests Plaintiff's resubmission of the claim, specifying whether the mail was damaged or if something was missing. *Id*. at p. 2. Rather than resubmitting the claim, Plaintiff appealed to the Commissioner of Correction and to the Inmate Grievance Office (IGO). The IGO rejected Plaintiff's appeal due to the fact he had not allotted enough time for the Commissioner to respond. *Id*. at p. 5.

On September 11, 2008, Plaintiff complained that a letter size envelope he had sent to the Circuit Court for Somerset County was returned to him for additional postage. ECF No. 1 at Ex. 3. He claimed the envelope had been opened and the stamp had been removed. Plaintiff concluded that the reason his mail had been returned was a lack of access to a postage scale to weigh outgoing mail so that proper postage can be placed on the envelope and it can be

delivered. *Id*. at p. 3. The institutional response notes that returned mail is treated as incoming mail; therefore, postage is removed from the envelope in accordance with policy. *Id*. at p. 2. On November 13, 2008, in response to Plaintiff's appeal of the ARP denial, the Warden was directed by the Commissioner to address Plaintiff's "issue regarding a process for adding postage before mail is sent out." *Id*. at p. 4. There is no documentation of the Warden's response to the Commissioner's directive, but Plaintiff's attempt to appeal the Commissioner's response to the IGO was dismissed as untimely. *Id*. at p. 5.

On August 11, 2008, Plaintiff filed an ARP concerning "several letters" sent to him by his brother that contained legal information. ECF No. 1 at Ex. 4. He claimed he was not notified that the mail his brother sent to him was being returned, nor was a reason for the return provided, in violation of both Division of Correction Directives and Code of Maryland Regulations. *Id*. at p. 3. Although the Warden's response indicated that Plaintiff did not establish his mail was in fact returned to sender, the Commissioner's response to the appeal found Plaintiff's claim meritorious and noted that prison staff would be instructed to follow applicable regulations. *Id*. at p. 4. Plaintiff further appealed the response to the IGO in an effort to be awarded monetary damages. There is no record of the resulting decision. *Id*. at p. 5.

On February 12, 2009, Plaintiff again claimed his legal mail had been opened outside of his presence and when he asked Captain Tyler, the mailroom supervisor, to sign the envelope indicating it had been opened improperly he refused to do so. ECF No. 1 at Ex. 5. Plaintiff alleged that Tyler was retaliating against him for previous ARP claims he had filed against Tyler that were found meritorious. *Id*. at p. 3. Plaintiff's ARP was dismissed because there was no evidence that Tyler was retaliating against him and because his legal mail had been opened mistakenly and the envelope had been resealed with scotch tape when the mistake was

3

discovered. Plaintiff was also reminded that staff is not required to initial envelopes as he demanded. *Id*. at p. 2.

On September 22, 2009, Plaintiff filed an ARP stating that his legal mail is continuously sent to him having already been opened outside of his presence. ECF No. 1 at Ex. 6. He notes the following items were opened without him being present "even though clearly marked" as legal mail: a letter from his brother which was returned without notification; correspondence[1] dated August 10, 2009, opened and sent through regular mail; and August 24, 2009 correspondence that was refused with a note stating "no book copying from Internet." *Id*. at pp. 2 and 6. The ARP was dismissed because "the mail in question did not meet the criteria of legal mail as defined in DCD 250-1." *Id*. at p. 3.

## Injunctive Relief

Pending a response from Defendants to the Complaint, Plaintiff filed correspondence seeking injunctive relief because he was being denied assignment to a housing unit for hearing impaired inmates and access to the phone system. ECF No. 16. Defendants were directed to show cause why the injunctive relief sought should not be granted. ECF No. 19. Defendants' Response to the Order states Plaintiff's housing assignment was changed after it was confirmed that he is hearing impaired. ECF No. 22 at Ex. A. Additionally, Plaintiff's access to the telephone system was described as a technical issue involving the entry of his PIN into the system at Maryland Correctional Institution Jessup (MCIJ) which had been resolved. *Id*.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1)

---

[1] Plaintiff does not specify in the ARP what the mail contained, who it was from, or how it qualified as "legal mail." He does, however, include copies of the mail in question which bears a return address for J.M. Cipolla and Associates located in Tempe, Arizona. ECF No. 1 at Ex. 6, pp. 9—12. In addition, one piece of mail that was allegedly opened outside of Plaintiff's presence was from the Clerk's Office for the Arizona Supreme Court. *Id*. at p. 13.

that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, __ U.S. __, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _ U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Plaintiff alleged in a Motion to Compel that legal documents were taken from him when he was transferred from Eastern Correctional Instition (ECI) and MCIJ. ECF No. 10. He claimed he was told he could not have his legal materials for a period of 30 days after his transfer. *Id.* Defendants responded that the legal materials had been provided to Plaintiff on August 30, 2010. ECF No. 22. Plaintiff does not refute that the materials were returned to him; thus, the claim for injunctive relief with respect to the legal materials is moot.

Additionally, correspondence was received from Plaintiff on November 20, 2010, describing ongoing problems with access to the telephone system. ECF No. 30. Counsel responded and provided records reflecting that Plaintiff did in fact have access to the telephone system at MCIJ. The records submitted showed Plaintiff had made a total of 89 phone calls and spent 2,230 minutes on the phone during the period of November 1 through December 22, 2010. ECF No. 31. Thus, to the extent Plaintiff seeks injunctive relief with respect to telephone access, it also appears to be moot.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show

5

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to

> attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Defendants assert they are entitled to summary judgment because Plaintiff has failed to allege injury as a result of the alleged interference with his legal mail. ECF No. 22. Defendants further assert that violations of Division of Correction Directives do not, alone, state a constitutional claim. Moreover, they claim the items Plaintiff states were opened outside of his presence do not fit the definition of "legal mail" as set forth in the regulation.

The directive defines legal mail as:

> Mail from a Court, Judge, Clerk of Court, Attorney-at-Law, the American Civil Liberties Union, Legal Aid Bureau, Commissioner of Correction, elected or appointed official such as the Governor, Attorney General, member of Congress or the Maryland General Assembly, or Department of Public Safety and Correctional Services, or Parole Commission, or Inmate Grievance Commission when received on official stationery of the individual or agency, or mail addressed from an inmate to any of the above individuals or agencies.

Division of Correction Directive (DCD) 250-1; ECF No. 1 at Ex. A, p. 57.

The items Plaintiff claimed were withheld were envelopes in which legal mail arrived, information mailed to him by a private investigator, and materials sent to him by his brother. The envelopes were withheld as a security measure and Plaintiff has provided no evidence to support a finding that the envelopes were or are necessary in his endeavours to challenge his criminal conviction or to bring another meritorious claim.

Plaintiff has provided evidence that J.M. Cipolla and Associates were appointed by the Arizona courts to assist him with his post-conviction case. ECF No. 28 at Ex. 1. However, the affidavit signed by Ms. Cipolla indicates that the materials sent to Plaintiff were articles concerning how to cope with a life sentence and "how blacks are treated in the criminal justice system in the US." *Id*. at p. 9. The Xerox copies which Plaintiff was denied were from a book entitled *The Tyranny of Good Intentions*, by Paul Craig Roberts and Lawrence M. Stratton. *Id*. The description of the materials, together with the fact that Ms. Cipolla is not an attorney, lead to the inescapable conclusion that the mail was not "legal mail" by any definition of the term. It is hard to imagine how Plaintiff's post-conviction case might be damaged if he was denied these materials. Even if the mail qualifies as "legal mail," the act of opening incoming mail does not in itself injure the right of access to the courts. The policy that incoming legal mail must be opened in the presence of its recipient "serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband." *Gardner v. Howard*, 109 F. 3d 427, 431 (4th Cir. 1997), *citing Harrod v. Halford*, 773 F.2d 234, 235 (8th Cir. 1985); *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975). The inadvertent opening of Plaintiff's legal mail does not state a constitutional claim. Defendants are entitled to summary judgment on this aspect of the Complaint.

While the interference by prison officials with certain types of mail may state a constitutional claim, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *See Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990). Absent any assertion by Plaintiff that he suffered an actual injury (such as a missed legal deadline), there is no constitutional claim. Plaintiff asserts he did miss two deadlines: one in Somerset County and one in Baltimore City Circuit Court. ECF No. 28 at p. 6 and Ex. 1, pp. 14 – 18.

Plaintiff's case in the Circuit Court for Somerset County was an appeal of an administrative agency decision which appears to have been denied on the merits on January 23, 2008. *See In the Matter of Melvin Coley*, Case 19-C-07-011828 (Cir. Ct. Somerset Co. 2008). [2] The paper which was returned to Plaintiff for insufficient funds was returned on August 29, 2007. ECF No. 28 at Ex. 1, p. 14. The interference with delivery of the document to the court was not the cause of Plaintiff losing a meritorious claim and does not state a constitutional claim.

The case pending before the Circuit Court for Baltimore City was a petition for habeas corpus relief. *See Melvin B. Coley v. Warden, ECI*, Case 24-H-08-000195 (Cir. Ct. Balt. City 2008). The dispositive decision issued in that case is dated July 17, 2008. *Id*. Plaintiff's correspondence dated September 7, 2008, to the Clerk indicates he attempted to file a Notice of Appeal on August 14, 2008. ECF No. 28 at Ex. 1, p. 15. The notice of appeal was never received and an untimely notice of appeal was rejected by the Clerk. *Id*. at pp. 16 and 17. Defendants point out that the allegation pertaining to the missed appeal deadline was not raised in the complaint and that Plaintiff failed to include a copy of the notice of appeal allegedly mailed to the Circuit Court, even though he kept copies of the correspondence he sent. ECF No. 29. Absent from the record are the following salient facts: the nature of the claim asserted in the

---

[2] The electronic docket sheets for state cases are reviewable at www.casesearch.courts.state.md.us.

Petition for Writ of Habeas Corpus; the reasons for the Circuit Court's dismissal; the basis for the planned appeal; and the measures taken by Plaintiff to insure the notice of appeal was delivered properly. Without this evidence it is impossible to discern if the non-delivery of the notice of appeal is attributable to an error made by prison staff and, if so, it resulted in denying Plaintiff an opportunity to pursue an important, meritorious claim. Plaintiff will be required to supplement the record with detailed information regarding the Petition for Writ of Habeas Corpus. Counsel for Defendants will be provided an opportunity to respond with copies of the Answer filed in the case as well as the decision issued by the court.

By separate Order which follows, Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted in part and denied without prejudice in part. Further papers required shall be filed in accordance with the schedule set forth in the accompanying Order.


Date: __January 31, 2011__                      __/s/_____
                                                DEBORAH K. CHASANOW
                                                United States District Judge